**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Action |
| v. | : | |
| | : | No. 08-163-01 |
| DARREN L. CEPHAS | : | |

**MEMORANDUM RE: MOTION FOR JUDGMENT OF ACQUITTAL
OR A NEW TRIAL**

**Baylson, J.**                                                              **June 4, 2009**

Presently before the Court is Defendant's Motion for Judgment of Acquittal under

Federal Rule of Civil Procedure 29(c), or, in the alternative, for a New Trial under Federal Rule

of Civil Procedure 33.  For the following reasons, the Court denies the motion.

**I.      Facts and Procedural History**

On August 28, 2008, after a three-day trial presided over by Judge Giles of this Court, a

jury found Defendant Darren Cephas guilty of several charges: (1) possession with the intent to

distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);

(2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §

924(c)(1); and (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  All

three charges derived from contraband obtained from a Chester, Pennsylvania house that was

admittedly owned by Defendant.  At trial, the government presented various evidence from

which, it argued, the jury could infer that Defendant constructively possessed the seized

contraband.

On two separate occasions during trial—once at the close of the government's case-in-

chief and again after the government's rebuttal—Defendant moved for judgment of acquittal

-1-

under Federal Rule of Criminal Procedure 29.  Defendant asserted that the government had not presented sufficient evidence to prove that Defendant had possessed either the drugs or guns seized from the house.  Judge Giles denied both motions.  (N.T. Pgs. 88-89, Aug. 26, 2008; N.T. 14, Aug. 27, 2008).  Defendant has now filed a renewed Motion for Judgment of Acquittal on the same grounds.  Defendant contends that the government presented no evidence directly linking him to the contraband or the backpack in which the contraband was found; rather, the government only offered evidence showing that Defendant owned the house from which the evidence was seized.  According to Defendant, the government's evidence did not show that Defendant lived at the house on a regular basis at the time of the search or that he exercised any control over the contraband found in the house.  Absent such evidence, Defendant argued the government had failed to prove that Defendant constructively possessed the seized contraband.

Defendant has also moved, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33.  Defendant argues the Court improperly refused to grant Defendant's request for a continuance to procure a witness that would have testified regarding the occupation of the house by a lessee rather than Defendant.  Judge Giles had granted a request for a continuance at the end of the second day of trial, allowing the defense to find and serve the witness before the third and final day of trial.  However, Judge Giles denied Defendant's second request for a continuance, made the morning of the third day, on grounds of delay and unfairness to the jury, when the witness had not been produced by that time.

In his motion for a new trial, Defendant also asserts that Judge Giles improperly excluded evidence that the alleged lessee of the house in question had been murdered shortly after the execution of the search warrant.  Such evidence, according to Defendant, could have been used

-2-

by the jury to infer that the lessee was using the property as a stash house and was the true party responsible for the contraband.

## II.     Legal Standards

### A.      Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(c)

Federal Rule of Criminal Procedure 29(c) provides that "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In ruling on a motion for acquittal based on insufficiency of the evidence, the court must view the evidence in the light most favorable to the government and "presume that the jury properly evaluated the credibility of witnesses, found the facts, and drew rational inferences." United States v. Wasserson, 418 F.3d 225, 237 (3d Cir. 2005) (citing United States v. Iafelice, 978 F.2d 92, 94 (3d Cir.1992)). Furthermore, the court must "sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." U.S. v. Cunningham, 517 F.3d 175, 177 (3d Cir. 2008) (internal citations omitted). It is the court's duty, therefore, to "independently re-examine the record and determine as a matter of law whether the evidence could support an inference of guilt beyond a reasonable doubt." United States v. Rich, 326 F. Supp. 2d 670, 673 (E.D. Pa. 2004) (citing United States v. Ashfield, 735 F.2d 101, 106 (3d Cir.1984)). In so doing, the court may not substitute its opinion for that of the jury and is limited to determining whether the jury made a permissible conclusion. Id.

### B.      Motion for a New Trial under Fed. R. Crim. P. 33

Under Rule 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Within its discretion, the court may grant a new trial only if it believes that "there is a serious danger that a miscarriage of justice has occurred-that is,

that an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  Additionally, the court must grant a new trial if errors occurred during the original trial, and it is reasonably possible that such errors substantially influenced the jury's decision. See United States v. Mastro, 570 F. Supp. 1388, 1390 (E.D. Pa. 1983); United States. v. Newmark, 2008 WL 927961, *32 (E.D. Pa. April 04, 2008) (Pratter, J.).  "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government but instead exercises its own judgment in assessing the Government's case." Johnson, 302 F.3d at 150 (internal citations omitted). Furthermore, the Third Circuit has explained that "motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." United States v. Martinez, 69 Fed. Appx. 513, 516 (3d Cir. 2003) (citing United States v. Allen, 554 F.2d 398, 403 (10th Cir. 1977)).

III.   **Evidence Presented at Trial**

      A.    **Evidence Pertaining to the Seized Contraband**

The government argued at trial that Defendant constructively possessed a backpack, containing drugs and firearms, as well as additional amounts of separately packaged drugs, all of which were seized from a house owned by Defendant.  The government presented evidence that the deed to the property in question, located at 333 Kerlin Street in Chester, Delaware County, Pennsylvania, was held by Defendant, and Defendant agreed to stipulate that he owned the property.  (N.T. Pgs. 35-36, Aug. 26, 2008).

The government offered extensive evidence concerning the search conducted at 333 Kerlin Street and the contraband seized during that search.  According to the testimony of the

supervising officer, Officer Rosen, the search warrant was executed slightly after 6:00 AM on

April 26, 2007, by several officers from the Municipal County Drug Task Force.  (N.T. Pg. 33,

Aug. 25, 2008).  During the search, a black backpack was discovered on a flight of stairs leading

to the basement of the property, and two cans of acetone were found next to the backpack.  (N.T.

Pg. 36, Aug. 25, 2008).  The officer later explained that acetone is used to "re-rock" cocaine

when separating cocaine into smaller quantities to sell.  (N.T. Pg. 14, Aug. 26, 2008).

      Inside the backpack police found a large amount of money wrapped in plastic, several

clear bags containing a white substance, and two firearms.  (N.T. Pgs. 36-37, Aug. 25, 2008).

Later analysis revealed the white substance to be 483 grams of cocaine.  (N.T. Pg. 10, Aug. 26,

2008).  The money  in the bag was later counted and recorded as $22,700.  (N.T. Pg. 29, Aug. 26,

2008).  The backpack also contained two digital scales, one large and one small, and a white

residue was found on the smaller scale.  (N.T. Pg. 12, Aug. 26, 2008).  Finally, in the backpack

police found a jar of inositol, which Officer Rosen explained is a cutting agent used to make the

cocaine into a larger quantity.  (N.T. Pg. 13, Aug. 26, 2008).

      Officer Rosen also testified that the police seized additional, smaller amounts of cocaine

and other drug paraphernalia from another location in the house.  In the drawer of a small table

on the first floor, police found several items: (1) a clear bag containing other new and unused,

clear plastic bags; (2) a small bag containing a white powder substance; and (3) a larger knotted

clear bag containing a slightly larger amount of the white powder substance.  (N.T. Pg. 37, Aug.

25, 2008).  Subsequent testing revealed the white powder substance was cocaine; the smaller

amount weighed 5.3 grams while the larger amount weighed 29.5 grams.  (N.T. Pgs. 16-17, Aug.

26, 2008).

In addition, the government presented the testimony of an expert witness, who explained that the amount of drugs, the other chemicals found with the cocaine, the digital scales, the plastic bags, and the cash were all consistent with distribution.  (N.T. Pgs. 72-82, Aug. 26, 2008). The expert also testified that the finding of firearms associated with the drugs was consistent with distribution and further supported the conclusion that the individual in possession of the drugs intended to sell them.  (N.T. Pgs. 82-85, Aug. 25, 2008).

According to the testifying officers, the police did not attempt to retrieve fingerprints from any of the seized evidence because of the small likelihood that such attempts would be successful given the condition of the evidence.  The police also thought fingerprints were unnecessary because they believed the contraband clearly belonged to Defendant.  (N.T. Pgs. 34, 62-66, Aug. 26, 2008)**.**

**B.**      **Evidence Pertaining to Defendant's Use of the House**

The government also offered evidence of Defendant's connection to and use of the property as of the time of the search.  Prior to the execution of the search warrant on Defendant's house, Defendant had been observed entering and leaving the premises on several occasions. Officer Rosen testified that he conducted surveillance of the house for two weeks before the search and had witnessed Defendant either coming or going from the house at three different times.  (N.T. Pgs. 28-31, Aug. 25, 2008).  Officer Rosen also testified that no other individual was seen entering or leaving the property during the surveillance period.  (N.T. Pg. 30, Aug. 25, 2008).

Furthermore, in the master bedroom on the second floor, police found several articles of expensive men's clothing, all in larger sizes, which the government argued would fit Defendant.

(N.T. Pg. 40, Aug. 25, 2008; N.T. Pgs. 26, 62, Aug. 27, 2997).  In the same room, police also discovered several pieces of mail addressed to "Darren Cephas" at 333 Kerlin Street.  This mail included a current bill from PECO, the local utility company, as well as a bill from City Financial Retail Services for the billing cycle ending on April 16, 2007.  (N.T. Pg. 40, Aug. 25, 2008; N.T. Pgs. 20-21, Aug. 26, 2008).  Several pieces of solicitation mail addressed to "Darren Cephas" at 333 Kerlin Street were also retrieved from the bedroom.  (N.T. Pgs. 21-22, Aug. 26,2 008).

In addition, police found a checkbook containing multiple check pads for Darren L. Cephas, with an address of 512 Parker Street.  (N.T. Pg. 41, Aug. 25, 2008; N.T. Pg. 19, Aug. 26, 2008).  Defendant's sister, Charmaine Cephas, testified at trial that 512 Parker Street was the address of her mother's home in Chester, Pennsylvania.  (N.T. Pg. 112, Aug. 26, 2008).  Several prescription bottles for Darren Cephas were also found in the master bedroom.  (N.T. Pg. 18, Aug. 25, 2008).  Finally, police found a high school identification card for Defendant and several pictures of Defendant in the house.  (N.T. Pg. 41, Aug. 25, 2008; N.T. Pgs. 20, 23, Aug. 26, 2008).[1]  The government also offered evidence of an account opened by Darren Cephas for a Brinks Home Security System, which was installed in December 2005 in the house at 333 Kerlin Street.  (N.T. Pgs. 36-27, Aug. 26, 2008).  A document from the company indicated an individual identified as "Darren Cephas" had called about his service for the account in March 2007.  (N.T. Pgs. 50-51, Aug. 26, 2008).

Defendant presented his two sisters as witnesses to rebut the government's argument that

---

[1]While police testified that several photos of Defendant were found, they only seized one photo.  The government presented that single photo as evidence at trial.  Officer Rosen testified that this photo was taken as an example of the many photos observed in the house.  (N.T. Pg. 20, Aug. 26, 2008).

he had been residing in the house and that the jury could therefore infer he possessed the seized

contraband.  First, Verniece Jackson testified that Defendant had purchased the property at 333

Kerlin Street several years earlier, around 2006, and had moved into the house at that time with

his girlfriend, Tamika Williams.  Ms. Jackson testified that Defendant had moved out of the

house in early 2007.  (N.T. Pgs. 91-92, Aug. 26, 2008).

     The second defense witness, Charmaine Cephas, testified that she helped Defendant

purchase the property in question at an auction and that Defendant and Ms. Williams had lived in

the house for most of 2006, until early 2007.  (N.T. Pgs. 97-98, Aug. 26, 2008).  Ms. Cephas

explained that after Defendant moved out of the property, he moved to Wilmington, Delaware

with Ms. Williams.  Defendant then leased the house at 333 Kerin Street to a friend of Ms.

Cephas's, Brian Bradley, beginning in March 2007.  (N.T. Pg. 99, Aug. 26, 2008).  Ms. Cephas

testified that she had been with Defendant when he gave the alleged rental agreement to Mr.

Bradley and that she had kept the returned, signed agreement for her brother, though she had not

witnessed Mr. Bradley sign it.  (N.T. Pg. 100, Aug. 26, 2008).  Finally, Ms. Cephas stated that

Brian Bradley had been killed a few days after the search of the property, but she was not

permitted to testify as to the cause of his death.  (N.T. Pg. 105, Aug. 26, 2008).  On cross-

examination, Ms. Cephas admitted that the alleged lease did not specify a particular property or a

particular time period for the lease.  (N.T. Pgs. 107-08, Aug, 26, 2008).

     Finally, in rebuttal, the government presented the testimony of Mr. Bradley's mother-in-

law, Daisy Williams-Mason, who testified that Mr. Bradley, his wife, and their child lived with

Ms. Williams-Mason prior to his death in April 2007.  (N.T. Pgs. 6-7, Aug. 27, 2008).  Mr.

Bradley had been in a relationship with Ms. Williams-Mason's daughter for over 30 years.  (N.T.

Pgs. 6-7, Aug. 27, 2008).  Ms. Williams-Mason also testified that Mr. Bradley was around 5'3"

and had a slim build.  (N.T. Pg. 8, Aug. 27, 2008).  She also evaluated the signature on the

alleged rental agreement and testified that, based on her familiarity with his writing, she did not

believe the signature on the alleged lease belonged to Mr. Bradley.  (N.T. Pgs. 8-9, Aug.27,

2008).

IV.     **Discussion**

    A.     **Motion for Judgment of Acquittal (Fed. R. Civ. P. 29(c))**

Defendant moves for judgment of acquittal, arguing that the government failed to provide

sufficient evidence to prove constructive possession of the contraband found at the house he

owned.  The Third Circuit has defined constructive possession as "conscious dominion over the

illegal substance, the power to control it, and the intent to exercise the control."  Jackson v. Byrd,

105 F.3d 145, 148 (3d Cir. 1997); see also United States v. Cunningham, 517 F.3d 175,178 (3d

Cir. 2008) (holding that constructive possession requires both dominion and control over an

object).  Furthermore, a fact finder may infer such intent from the totality of the circumstances.

Jackson, 105 F.3d at 148.

In Jackson, the Third Circuit upheld the defendant's conviction for constructive

possession of drug paraphernalia, which was found in the defendant's leased apartment, even

though the paraphernalia was seized from an ice chest in the defendant's brother's room.  105

F.3d at 149.  Although the defendant claimed she did not have control over her brother's room,

the court held a reasonable jury could infer such control from the surrounding circumstances.  Id.

First, the court explained that "Pennsylvania considers being a lessee or owner of the residence

an important factor in establishing dominion and control."  Id.; see also Commonwealth v. Sanes,

955 A.2d 369, 374 (2008) (emphasizing the importance of the defendant's residence when establishing constructive possession).  The court also noted that when police executed the search, the defendant and her infant child were the only people in the home, and her brother's room was unlocked, giving her access to the room and therefore dominion and control over the contraband. Id.  Finally, police had found drug paraphernalia, including scales, empty vials, and a loaded shotgun, in  kitchen cabinet and a closet, both of which Defendant shared with her brother.

Similarly, in United States v. Brown, police searched a residence after a six month period of surveillance, during which police witnessed only defendant and his girlfriend entering and occupying the property.  284 Fed. Appx. 867, 869 (3d Cir. 2008).  In the bedroom, the police found drugs in plain view as well as drug paraphernalia in a shoe box.  Id.  The defendant's passport and other documents were also found in the bedroom.  Id.  Based on this evidence, the court found a "logical and convincing connection between the facts established and Brown's knowing exercise of dominion and control over the crack cocaine."  Id.  Likewise, in United States v. Smith, the court held that a jury could conclude beyond a reasonable doubt that defendant had ready access and "unfettered power and intention to exercise control over" contraband found in a residence to which he had a key and to which his mail was addressed. 2008 WL 5381384, *2 (E.D. Pa. December 24, 2008) (Pratter, J.).

Given these decisions, the evidence presented to the jury in this case supports Cephas' conviction.  First, Cephas owned the property where the contraband was found, which, as discussed above, is strongly indicative of his control and dominion over the contraband under Pennsylvania law.  See Jackson, 105 F.3d at 149; Sanes, 955 A.2d at 374.  Furthermore, the government presented substantial evidence that Defendant was residing in, or at least occupying

-10-

to some extent, that property.  Not only did police find Cephas' identification cards, mail, and recent credit card bills addressed to the residence, but they also found his photographs and male clothing that would fit someone of his size.  Defendant also had a current account in his name for a home security system for that residence.  Compared to the evidence of occupation in both Brown and Smith, where the court found an inference of residence was reasonable, the extensive evidence here can clearly support the jury's inference of residence and therefore of constructive possession.

Defendant, however, argues that even if the government showed access to the contraband through evidence of his ownership and occupancy of the house, the government failed to prove the knowledge of or intent to possess that contraband.  Defendant further contends that the government cannot prove those elements merely by showing his proximity to the drugs or his presence on the property in which they are located.  See United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996).  Yet in the cases discussed above, the Third Circuit implicitly held that a jury could infer not only control and dominion based on the Defendant's ownership or residence in an apartment or house, but also the requisite level of knowledge and intent to satisfy the constructive possession standard.  The court in those cases did not require any additional evidence of intent to uphold the convictions based on constructive possession.  A reasonable jury here could similarly infer knowledge and intent to establish constructive possession from the evidence presented at trial.

Furthermore, the court in Jackson, which upheld a conviction based on constructive possession, specifically distinguished Jenkins, emphasizing that the defendant in Jenkins did not own or lease the property from which the contraband was seized.  Jackson, 105 F.3d at 149.  In

Jackson, the court explained that the defendant's ownership of the property gave the defendant access to all areas of the residence, even her brother's room.  In this case, the seized contraband was located not in a room normally occupied by another individual, but rather in common areas, rendering an inference of Defendant's access and control even more reasonable.  Cf. Commonwealth v. Valette, 613 A.2d 548, 550 (Pa. 1992) ("Constructive possession may be found in one or more persons if the contraband is found in an area of joint control and equal access." (citations omitted)).  The inference here is further supported by the police's observation that only Defendant, and no one else, including Mr. Bradley, was seen entering the house in the two weeks prior to the search, similar to the circumstances in Brown.  Thus, even if Defendant had leased the house to Mr. Bradley, that joint access did not necessarily negate Defendant's ability and intent to exercise control over items found in the house he owned.  See U.S. v. Introcaso, 506 F.3d 260, 271 (3d Cir. 2007) ("Such dominion and control need not be exclusive but may be shared with others.").

Admittedly, the government did not present evidence explicitly showing Defendant's knowledge of the drugs or any direct connection between the contraband and Defendant.  While such evidence, such as fingerprints connecting Defendant to the drugs and guns, would have been helpful, it is not necessary to support the conviction based on a reasonable inference of constructive possession.  Thus, there was sufficient evidence here, based on Defendant's ownership and occupation of the house, for the triers of fact to reasonably find the essential elements of constructive possession beyond a reasonable doubt.  Defendant's Motion for

Judgment of Acquittal is denied. [2]

**B.     Motion for a New Trial (Fed. R. Civ. P. 33)**

Defendant offers two grounds for granting a new trial under Fed. R. Civ. P. 33: (1) Judge Giles's refusal to grant a second continuance to allow Defendant to produce a witness who would have testified about the alleged lessee's occupation of Defendant's property and his possession of a  backpack similar to the one found on Defendant's property; and (2) Judge Giles's refusal to admit evidence regarding the death of the alleged lessee of Defendant's property.  This Court will consider each argument in turn.

**1.     Denial of Defendant's Second Request for a Continuance**

First, this Court finds unpersuasive Defendant's argument that he deserves a new trial because Judge Giles denied the request for an additional continuance.  "In determining if a continuance should be granted, a court should consider: the efficient administration of criminal justice; the accused's rights , including an adequate opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance."  United States v. Kikumura, 947 F.2d 72, 78 (3d Cir. 1991) (citing United States v. Fischbach and Moore, Inc., 750 F.2d 1183, 1195 (3d Cir. 1984)).  The Third Circuit has long held that while a trial judge

---

[2]In reaching this conclusion, the Court has considered both the brief submitted on Defendant's behalf by defense counsel as well as Defendant's letter, dated June 24, 2009, to this Court.  However, the gist of Defendant's letter relates to ineffectiveness of counsel, particularly counsel's refusal to raise certain arguments at trial.  That issue is not properly decided at this stage of the litigation, before judgment has been entered, and instead should be raised on collateral review.  See United States v. Thornton, 327 F.3d 268, 271-72 (3d Cir. 2003) (noting that it is preferable for ineffective assistance of counsel claims to be considered on collateral review rather than on direct appeal because the evidence produced at trial is dedicated to issues of guilt or innocence and may not disclose facts necessary to decide the ineffective assistance of counsel claim (citing Massaro v. United States, 538 U.S. 500 (2003)).

should not always "insist upon expeditiousness in the face of a justifiable request for a delay[,]"

every denial of a request for more time does not violate the defendant's rights.  <u>U. S. ex rel.</u>

<u>Carey v. Rundle</u>, 409 F.2d 1210, 1215 (3d Cir. 1969).

      An appellate court will only reverse a trial court's decision to deny a request for a

continuance if abuse of discretion is shown.  <u>Kikumura</u>, 947 F.2d at 78.  Such abuse requires the

court have "'committed a clear error of judgment in the conclusion it reached upon a weighing of

the relevant factors." <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 146 (3d Cir. 2000) (citations

omitted).  This standard of review reflects the discretion awarded to judges in deciding a motion

for a continuance and balancing the interests at stake.  The Third Circuit has noted that

"decisions as to whether to grant a continuance will often be arguable and different courts may

well reach different conclusions as to the need for a continuance." <u>Kikumrua</u>, 947 F.2d at 78

(citing <u>Ungar v. Sarafite</u>, 376 U.S. 575, 591 (1964)).  Thus, to obtain a new trial, Defendant must

show that despite the discretion given to trial judges to make such decisions, the court's denial of

the request for a continuance at trial was so erroneous to have produced a miscarriage of justice.

      Here, Judge Giles granted Defendant's initial request for a continuance, concluding the

second day of trial several hours early, in order for Defendant to procure the appearance of the

witness, whom defense counsel believed to be in custody at the time. (N.T. Pgs. 89, 114, Aug.

26, 2008).  At that time, defense counsel agreed that if he was unable to find the witness by the

following morning, or if the witness was unavailable, the trial would proceed without the

defense's witness.  (N.T. Pgs. 114-15, Aug. 26, 2008).  The following morning, the third and

final day of trial, defense counsel again asked for a continuance because he had been

unsuccessful at finding the witness.  Defense counsel offered no reason for his inability to

-14-

produce the witness for trial or any explanation of his efforts to do so, stating simply that

Defendant's family had been in contact with the witness's family and it appeared that the witness

was still unavailable.  (N.T. Pg. 3, Aug. 27, 2008).  Upon asking for the further continuance,

Defense counsel stated that he did not think it would take much longer to produce the witness,

but was not exactly sure.  (N.T. Pg. 3, Aug. 27, 2008).  Based on these facts, Judge Giles

concluded that the trial should proceed, as the jury was expecting to continue with and finish the

trial that day.  (N.T. Pg. 3, Aug. 27, 2008).

Under these circumstances, this Court cannot find that the refusal to grant the second

continuance was improper, and thus it cannot conclude that the denial amounted to a miscarriage

of justice sufficient to warrant a new trial under Rule 33.  The defense had ample opportunity

before trial to procure the availability of the witness, and Defendant does not argue that he was

unable to adequately prepare a defense.  See Gov. of Virgin Islands v. Charleswell, 115 F.3d 171,

174 (3d Cir. 1997) (finding an abuse of discretion in the trial court's denial of a request for a

continuance where defense counsel, a solo practitioner, was not given adequate time to prepare

due to an unexpected death in the family).  Furthermore, defense counsel had agreed to proceed

with the trial if he was unable to produce the witness and acknowledged that he was unsure

when, if ever, the witness would become available.  Defendant has not explained how, given

those facts, he suffered substantial prejudice from the Court's denial of the request for a second

continuance.

In granting the first motion but denying the second request for a continuance, the trial

court did not act so arbitrarily or with such clear error as to warrant a new trial.  Rather, the trial

court appropriately balanced the interest of judicial efficiency with the right of the defendant to a

fair trial.  Thus, Defendant's motion for a new trial pursuant to Rule 33 due to the denial of his request for a continuance is denied.

> **2.** **Exclusion of Evidence on the Death of the Alleged Lessee of Defendant's Property**

Defendant also argues that he is entitled to a new trial because the trial court improperly excluded evidence on the circumstances surrounding the death of Mr. Bradley.  Specifically, during the direct examination of Defendant's witness, Charmaine Cephas, defense counsel attempted to question Ms. Cephas about the death of Mr. Bradley, but the government objected on grounds of relevance, and the Court sustained the objection.  (N.T. Pg. 105, Aug. 26, 2008).[3]  The government argues that this evidence was properly excluded on both relevance grounds and because the testimony was hearsay.

While Defendant responds that the testimony would have been both relevant and an exception to the hearsay rule, the court did not err in excluding the contested testimony.  A motion for a new trial should only be granted if Defendant can show the trial court committed  a clear error that had the possibility of causing substantial prejudice.  Notably, an appellate court reviews a trial court's decision to admit or exclude testimony after an objection for abuse of

---

[3] Defendant also sought to introduce testimony by another witness, the girlfriend of Mr. Bradley, on both Mr. Bradley's occupation of the house and on the nature of his death.  In discussing with counsel the proper scope of the witness's testimony, should she testify, the Court seemed to restrict the testimony to Mr. Bradley's use of the property.  (N.T. Pgs. 114-14, Aug. 26, 2008).  Although the witness never testified at trial, the government's brief to this court argues that Judge Giles properly restricted the scope of this testimony.  However, the argument over this testimony is moot, as the witness was never produced.  This Court has already concluded that Judge Giles did not err in refusing to continue the trial further so Defendant could attempt to find the witness.  As she did not actually testify, any objection by Defendant to Judge Giles's ruling on her hypothetical testimony is irrelevant.

discretion, U.S. v. Brink, 39 F.3d 419, 425 (3d Cir. 1994), indicating again the level of discretion given to the trial court in making these judgments.  At trial, Judge Giles determined that the testimony of Ms. Cephas on Mr. Bradley's death was irrelevant, "unless she was present [at the death]," although he did not give any reasons at trial for this conclusion.  (N.T. Pg. 105, Aug. 26, 2008).  Defendant contends that the information was relevant to the defense, which sought to establish that Mr. Bradley—not Defendant—was engaged in drug trafficking, possessed the drugs found in the property on Kerlin Street, and had been killed as a result of his involvement in the drug trafficking business.

Regardless of whether the testimony would have been relevant, the testimony was properly excluded under the hearsay rule.  Though Judge Giles sustained the objection, which was made on relevance grounds, he conditioned his ruling on the witness having not been present at the death of Mr. Bradley.  As personal, first-hand knowledge of an event is a factor considered in analyzing hearsay, Judge Giles's comment indicated he was also considering the implications of the hearsay rule.  Ms. Cephas did not testify that she was present at the death of Mr. Bradley, and Defendant has not argued that she was.  Therefore, as the government contends, any testimony regarding the manner of his death would be hearsay unless an exception to the hearsay rule applied under the Federal Rules of Evidence.

Defendant contends that Fed. R. Ev. 803(19) provides the necessary exception to the hearsay rule because Ms. Cephas would have based her testimony on the reputation in the community regarding Mr. Bradley's death.  Rule 803(19) provides an exception to the hearsay rule when the witness testifies as to the "reputation . . . in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy . . . ."  The Third Circuit has explained that

this exception is justified because such reputations "within a well-defined community are considered to have [a] circumstantial guarantee of trustworthiness." Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 98 (3d Cir. 1999). However, the principle behind admitting such evidence requires the proponent "establish that the reputation testimony arises from sufficient inquiry and discussion among persons with personal knowledge of the matter to constitute a trustworthy 'reputation.'" Id. at 99-100. "Rumors and speculation are clearly insufficient" to establish the necessary foundation. Id. at 100. Rather, the proponent of the testimony must qualify the witness' membership in a group familiar with the personal history of the person in question. Id. Furthermore, before admitting the testimony, the trial court "'should consider . . . not only the foundation that has been laid for the reception of this reputation evidence, but also such factors as the significance and nature of the fact towards which the proof is directed, the availability of other evidence, and the nature of the litigation.'" Id. (quoting Weinstein's Federal Evidence, § 803.23[1] (Joseph M. McLaughlin ed., 2d ed. 1999)).

Based on these requirements, the testimony of Ms. Cephas regarding the death of Mr. Bradley would not have fallen within the hearsay exception of Rule 803(19). First, Defendant did not lay sufficient foundation as to Ms. Cephas's membership in a group with knowledge of Mr. Bradley's personal life. Ms. Cephas did testify that Mr. Bradley "was a guy I went to school with," (N.T. Pg. 99, Aug. 26, 2008), but she did not further describe how recently they attended school together, the extent and nature of their relationship at the time of his death, or any other common friends or family between the two that constituted other members of the "group." In the absence of such information, the Court cannot determine that Ms. Cephas was engaging in the type of community "inquiry and discussion" that justifies the reputation exception. Furthermore,

this Court cannot ignore the purpose of Ms. Cephas's testimony or the type of litigation: Ms. Cephas was testifying at the criminal trial of her brother as a defense witness, and her testimony was directed toward advancing the theory of the defense that another individual, Mr. Bradley, was the true guilty party.  Without the proper foundation and given Ms. Cephas' interest in the outcome of the trial, the guarantee of trustworthiness justifying admitting the reputation evidence does not exist here, and the testimony would be inadmissible under 803(19).

Defendant has not identified any other exception to the hearsay rule that would have permitted Ms. Cephas's testimony.  Thus, regardless of which grounds Judge Giles relied on in sustaining the objection to the testimony, the statements would have been impermissible hearsay and were properly excluded.  Therefore, no error causing a miscarriage of justice occurred at trial.  Defendant's motion for a new trial under Rule 33 on the grounds of the improper exclusion of evidence is also denied.

**V.**      <u>**Conclusion**</u>

Given the extensive evidence presented by the government at trial that Defendant owned and resided in the property where the contraband was found, the jury reasonably inferred that Defendant constructively possessed the contraband.  Thus, the verdict is supported by sufficient evidence, and Defendant's motion for judgment of acquittal under Rule 29(c) is denied.  Furthermore, the trial court did not err in denying the Defendant's second motion for a continuance or in excluding testimony regarding the death of Mr. Bradley.  As no miscarriage of justice occurred, Defendant's motion for a new trial under Rule 33 is similarly denied.

An appropriate Order follows.

O:\Lauren\USA v. Cephas\motion for judgment of acquittal.wpd